## CARBO–FROST, Inc., et al. v. STANLEY KNIGHT CORPORATION et al.

### No. 7432.

Circuit Court of Appeals, Seventh Circuit.

June 2, 1941.

Rehearing Denied July 16, 1941.

Paul R. Stinson, of Kansas City, Mo., Geo. Bayard Jones, of Chicago, Ill., and Kenneth S. Neal, of New York City, for appellants.

Geo. H. Wallace and Chas. B. Cannon, both of Chicago, Ill., for appellees.

Before EVANS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

Patent No. 1,785,326, dated December 16, 1930, covering "Method of and Apparatus for Utilizing Phase-Changeable-

"Material," is the subject of this litigation. The District Court found the claims in suit were invalid. It also found that if valid, they were infringed.

We might well accept the opinion of the District Court for it states the reasons for the conclusions reached, with which we agree. Appellants, however, argue most earnestly that the prior art citations upon which the court relied are in a different field, and they also cling tenaciously to the showing of extensive use, which would be quite impressive if we were otherwise in doubt. However, we need not investigate the extent of the use nor how much of it may be justifiably attributed to the patent, unless there exists a doubt as to the patent's validity.

The invention deals with the container for distribution of $CO_2$, a gas, under pressure, for which there is and long has been a demand from producers of carbonated beverages. Appellants claim that prior to the advent of its Rudd liquefier, liquid $CO_2$ was produced in central (generally "coke") plants, charged into steel cylinders which were shipped to the distributors in various key cities, and from there sold and delivered in cylinders to customers or users. When the cylinder was empty, it was brought back to the distributing station from which it was returned to the plant to be refilled.

A standard steel cylinder when charged, contained sixty pounds of liquid $CO_2$. It was very cold and as the temperature moderated, more and more of the liquid $CO_2$ changed to gas, until a pressure of 1,000 to 1,500 lbs. per square inch was produced. These cylinders were classed as dangerous apparatus. Each weighed approximately 110 lbs. Thus, in every sale of 50 lbs. of gas, there was involved a freight bill of 270 lbs. of shipping weight. The shipping distance ranged from 200 to 800 miles, and the freight charges became a heavy burden on the industry. For this reason the trade had long sought a way of avoiding it.

Patentable invention in appellants' liquefier is asserted, because it made possible the elimination of the long distance shipping and the freight bills above referred to. It is also claimed that the satisfying of an acute demand long existing evidences patentable novelty.

Of the seven claims of this patent, three are for method (1, 2, and 3) and the last four are apparatus claims.

We quote claims 1 and 4 as somewhat typical (one of the process, the other of the product) of the invention which the patent covers:

No. 1. "The method of sealing the filling opening of a container, which comprises

"(a) introducing phase-changeable solid material into said container through said opening,

"(b) and thereafter retaining a closure plate in sealed relation with respect to said opening solely by the pressure exerted thereon by gas arising from change in phase of said solid material."

No. 4. "In combination,

"(a) a container having a surface defining a filling opening,

"(b) solid carbon dioxide being disposed in said container by passage through said filling opening,

"(c) a closure plate interiorly of said container and adapted to contact with said surface to seal said filling opening,

"(d) said closure plate being retained in sealing relation by pressure of the gas evolved from said solid carbon dioxide."

In his specifications patentee directed attention to the novel element in his invention. He said:

"My invention also relates to the container sealing arrangement involving * * a plate held in container closing position by pressure exerted thereon from the interior of said container."

And,

"A pressure is developed by a gaseous medium resulting from change in phase of one or more blocks or masses of solid or semi-solid ice like material of carbon dioxide * *."

And,

"My invention relates to a container arranged to be sealed in a novel, simple and highly practical manner."

He further described his product by a drawing which represented a casing "of any size, or shape," the wall "being of iron or steel" of sufficient thickness to resist high pressure.

Solid $CO_2$ blocks are in unstable equilibrium and after being placed in the container there is an evolution of $CO_2$ gas, so he says. Accordingly the member 3, which is a plate hanging from the wall and connected therewith by a chain, may be manually retained in the position illustrated, for

a brief period and until the gas pressure within the container builds up to an extent sufficient to retain it in its position. As the gas pressure increases this member 3 is very firmly held in that position.

In short, we have a structure with a door in the top of a container which is hinged thereto and swings freely, thus opening or closing as the pressure is relieved or applied. It is sealed by the ever-increasing pressure of the gas.

This is the appellants' invention, as disclosed by them in their specifications. The claims are drawn to cover such asserted practices.

Not only is there prior art, illustrated by the Houston patent, No. 703,268, wherein the inventor stated:

"By the above construction I am able to make a very simple and steam tight joint in which, even if the bolt should break, the cover plate would still retain its position owing to the steam pressure against it * *,"

And by the Slate patent, No. 1,592,993, wherein Slate said:

"It (the container) is provided with a sealing device, as illustrated in the drawing, adapted to effect an air-tight seal by pressure exerted on the device from within the container, * *"

And by the French patent, No. 632,993, where French stated:

"When the cover has been placed in the correct position, pressure is permitted into the container by a pipe. The cover will then be sealed, due to the pressure and is automatically secured, the more firmly the higher the pressure is. Thus the locking by means of bolts or any fixing members is avoided,"

but there is also literature wherein was published various ways of sealing cover plates in boiler manholes. We quote from one:

"It permits the insertion of a cover plate for the opening which will carry the internal pressure up by being forced upon its seat."

Even in the absence of any prior art, such as illustrated by patents and publications, we agree with the District Court that the product claims are invalid for want of invention.

While the process claims may present a somewhat closer question than the product claims, we again agree with the District Court who found them invalid.

The prior art heretofore cited is also pertinent in reference to these claims. Slate's patent even deals with solid carbon dioxide as the phase-changing material.

Appellants argue that the patents cited as part of the prior art were not in the same or kindred arts. In fact, there is no escape for them, if the prior patent citations are pertinent—that is, if they are proper prior art citations.

They all dealt with the art of holding a door closed by pressure from within, that is, closed and held closed by internal pressure. Closing by pressure created from within is the art which applies. The cited patents were pertinent.

The decree is affirmed.